UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 7 |
| BRIAN RICHARD MCCABE, | |
| DEBTOR | Bankruptcy No. 13-19715-AMC |
| CONOR CORCORAN, | |
| PLAINTIFF | |
| V. | |
| BRIAN RICHARD MCCABE | |
| DEFENDANT | Adversary Proc. No. 14-00609 |

OPINION

I.  INTRODUCTION

Conor Corcoran ("Corcoran") obtained a pre-petition judgment ("Judgment") against Brian McCabe ("Debtor") as a result of certain litigation filed by Corcoran against the Debtor in the Philadelphia Court of Common Pleas ("Pre-Petition Litigation"). After the Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code ("Bankruptcy Code") and subsequently converted his case to Chapter 7, Corcoran initiated this adversary proceeding to have the Judgment deemed nondischargeable under § 523 and to deny the Debtor his discharge pursuant to § 727.

Corcoran has filed a motion for summary judgment ("Motion") invoking res judicata, equitable estoppel and judicial estoppel in connection with his claim that the Judgment was for a willful and malicious injury under § 523(a)(6) and therefore is nondischargeable. Corcoran also

- 1 -

seeks summary judgment under his § 727 claims based upon the Debtor's inclusion of the Judgment in the Schedules and the Debtor's failure to file a confirmable plan.

As discussed below, res judicata does not apply to nondischargeability proceedings and neither equitable estoppel nor judicial estoppel apply because Corcoran has failed to identify any inconsistent positions taken by the Debtor. Finally, Corcoran's argument under § 727 fails because he has not demonstrated that the Debtor made any false oath or claim or withheld any recorded information. The Court accordingly will deny the Motion for Summary Judgment on all grounds.

## II. FACTS AND PROCEDURAL HISTORY

In October 2005, Corcoran represented members of Ink & Dagger, a consortium of musicians including the Debtor's late brother, Sean McCabe, in a copyright infringement case. Debtor's Complaint ("Compl.") ¶¶ 8–9. The Debtor, as the executor of his brother's estate ("Estate"), served as the representative of the Estate. Id. ¶ 9. When the litigation settled in July 2006, the proceeds were deposited into Corcoran's IOLTA escrow account for distribution to the members of Ink & Dagger. Id. ¶¶ 10–11. Corcoran then began, on a *pro bono* basis, to complete "any and all registration and tax paperwork" ("Paperwork") necessary to distribute the Estate's portion of the proceeds. Id. ¶¶ 17, 20.

Corcoran alleges that he could not legally distribute the Estate's proceeds to the Debtor until he completed the Paperwork and that he advised the Debtor that it "would take as much as a year" because he was inexperienced in such work. Id. ¶¶ 16 and 18. The Debtor disputes these allegations. Answer of Debtor Brian Richard McCabe to Compl. of Conor Corcoran's Obj. to Discharge ("Answer") ¶¶ 16 and 18. It is undisputed that Corcoran completed the Paperwork and sent it to the Debtor for his signature in July 2007. Compl. ¶ 20, Answer ¶ 20. Corcoran

alleges that, after the Debtor signed and returned the Paperwork, Corcoran submitted it to the appropriate authorities for approval. Comp. ¶ 21.

While the Paperwork was pending approval, the following post was published on the social networking website Myspace: "Bored? Call Connor [sic] Corcoran and ask him why Sean McCabe's share of the settlement went in his pocket. Neither Sean's family or his estate has received any money. It has been well over a year since suit was settled and the rest of the members received their share" ("Myspace Post").[1] *Id.* ¶ 22.

On November 29, 2007, the Paperwork submitted by Corcoran was approved and Corcoran immediately mailed a settlement check to the Debtor on account of the Estate's share of the settlement. *Id.* ¶ 26. On March 12, 2008, Corcoran filed the Pre-Petition Litigation against the Debtor for libel and false light invasion of privacy based upon the Myspace Post. *Id.* ¶¶ 27–32.

The Debtor's counsel failed to file a responsive pleading in the Pre-Petition Litigation and default judgment was entered against the Debtor on August 28, 2008. Answer ¶ 33. After a damages hearing during which "all parties were represented by counsel, all parties testified, and all parties were cross examined," the Philadelphia Court of Common Pleas ("CCP") entered an order ("Order") awarding Corcoran $50,000 in compensatory damages and $25,000 in punitive damages. Am. Br. p. 3.; Compl. ¶¶ 34, 37. The CCP subsequently entered the Judgment against the Debtor. *Id.*

On March 19, 2009, the Debtor appealed the Order. Compl. ¶ 35. On June 3, 2009, the CCP issued an opinion in support of the damages Order ("Opinion") pursuant to Pennsylvania

---

[1] Corcoran alleged that the Myspace Post was published by the Debtor on his personal Myspace page. *Id.* ¶ 22. The Debtor, however, alleges that the Myspace Post was actually published by Ink & Dagger on the band's Myspace page, not the Debtor's Myspace page. Answer ¶ 22.

Rule of Appellate Procedure 1925(a). The Opinion attributed the Myspace Post to the Debtor and stated that: "It is clear from these undisputed facts that the [Debtor's] statements were defamatory. [Corcoran] had acted properly in every way as an attorney for his clients, as well as for the Estate. The [Debtor] had no right to publish this defamatory statement." *Id.* Ex. C at 4. The CCP then concluded that the damages that were awarded were "fair and reasonable based on the evidence and should not be disturbed." *Id.* Ex. C at 5.

The Debtor's appeal ultimately was quashed by the Pennsylvania Superior Court because the Debtor failed to timely file the necessary post-trial motions after the Order was entered. *Id.* Ex. A at 10; Answer ¶ 39.

On November 5, 2013, the Debtor filed this bankruptcy proceeding under Chapter 13. The Chapter 13 Trustee, William C. Miller ("Trustee"), subsequently filed objections to confirmation of the Debtor's Chapter 13 Plan ("Plan") based upon the Debtor's failure to amend the Plan as directed at the § 341 meeting and the Plan's ambiguity regarding the treatment of secured and priority claims. Obj. of Chapter 13 Trustee to Confirmation of Plan of Debtor(s) ("First Trustee Obj.") 1 (Mar. 19, 2014); Obj. of Chapter 13 Trustee to Confirmation of Plan of Debtor(s) ("Second Trustee Obj.") 1 (Mar. 28, 2014). When the Debtor failed to cure those Plan defects, the Trustee moved to dismiss the bankruptcy for unreasonable delay.[2] Chapter 13 Standing Trustee's Mot. for Dismissal ("Mot. for Dismissal") 1.

On August 1, 2014, the Debtor voluntarily converted his case to Chapter 7. Corcoran filed the Complaint objecting to the discharge of the Judgment on October 31, 2014 and the Debtor subsequently filed an answer. On April 15, 2015, Corcoran filed the Motion for Summary Judgment ("Motion") and the Debtor filed an objection to the Motion. After a hearing

---

[2] The Debtor asserts that the Trustee moved to dismiss the bankruptcy because the Debtor failed to make payments under the Plan for financial reasons. Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 17.

- 4 -

on the Motion and at the Court's request, both parties filed briefs in support of their arguments. In Corcoran's brief ("Amended Brief"), Corcoran clarified that he seeks summary judgment on the dischargeability of the Judgment under § 523(a)(6) and is only objecting to the Debtor's general discharge pursuant to § 727(a)(4). The Court will now address these arguments.[3]

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] In reviewing a motion for summary judgment, a court views the facts and draws reasonable inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "[W]here, as here, 'the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent.'" *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010) (quoting *Adams v. Consol. Rail Corp.*, 1994 WL 383633, at *1–2 (E.D. Pa. July, 22 1994)). Under the more stringent standard, "the movant must . . . show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.* (quoting *Adams*, 1994 WL 383633, at *1–2). If the moving party carries its burden, "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quoting *Adams*, 1994 WL 383633, at *1–2).

---

[3] In his Amended Brief, Corcoran stated that he is withdrawing his claims under §§ 523(a)(10) and (19) and abandoning his claims under §§ 727(a)(2) and (3). Am. Brief n.2 and p. 9.

[4] Federal Rule of Civil Procedure 56 is applicable to adversary proceedings as incorporated by Federal Rule of Bankruptcy Procedure 7056.

## IV. DISCUSSION

### A. Res Judicata Does Not Apply to Nondischargeability Proceedings

Corcoran argues that res judicata (or claim preclusion) arising from the Pre-Petition Litigation applies to the nondischargeability proceeding currently before this Court. Am. Br. p. 5-6. However, although the Judgment from the Pre-Petition Litigation establishes the existence of the Debtor's indebtedness to Corcoran, it is clear that the Judgment does <u>not</u> have a res judicata effect on such debt's dischargeability because "Congress intended to leave discharge questions in the exclusive jurisdiction of the bankruptcy courts." *In re Graham*, 973 F.2d 1089, 1091, 1095–96 (3d Cir. 1992) (citing *Brown v. Felsen*, 442 U.S. 127, 136–37 (1979)); *In re Jacobs*, 381 B.R. 128, n. 26 (Bankr. E.D.Pa. 2008) ("[I]t is well established that res judicata does not apply in a dischargeability proceeding in bankruptcy."); *In re Hawkins*, 231 B.R. 222, 231 (D.N.J. 1999) ("[P]ursuant to 11 U.S.C.A. § 523(c), United States Bankruptcy Courts have the "exclusive jurisdiction" to determine the dischargeability of a debt…Thus, a pre-petition state court judgment does not have a res judicata effect on a subsequent dischargeability proceeding in bankruptcy court.").

Specifically, § 523(c) establishes that bankruptcy courts have exclusive jurisdiction to determine nondischargeability disputes under § 523(a)(6).[5] *See, e.g., Judd v. Wolfe*, 78 F.3d 100, 114 (3d Cir. 1996); *In re Granoff*, 2006 WL 1997408, *5 (Bankr. E.D.Pa. 2006). Therefore, Corcoran's res judicata argument is without merit.

---

[5] Section 523(c) provides in relevant part that: "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless…the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6)…"

B.  **Corcoran Did Not Raise Collateral Estoppel in His Motion and, Even If He Had Properly Done So, the Court Would Not Have Granted the Motion on Such Basis**

In his Amended Brief, Corcoran admits that he never raised the issue of collateral estoppel as a basis for granting his Motion and asserts that the Debtor erroneously presumed that he did so.[6] Accordingly, the Court will not consider collateral estoppel as a basis for granting summary judgment in this adversary proceeding.

However, even if Corcoran had properly raised the applicability of collateral estoppel in his Motion, the Court would not have granted the Motion on such basis. By way of background, unlike res judicata, collateral estoppel generally applies in dischargeability proceedings. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 284–85 (1991). In such instances, the Court applies the preclusion law of the prior forum, here Pennsylvania law, in making the determination. *See Estate of Tyler* ex rel. *Floyd v. Grossman*, 2015 WL 3634371, at *4 (E.D. Pa. June 11, 2015) (citing *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994)).

"The trial court has broad discretion to determine if collateral estoppel should apply." *In re Cunningham*, 526 B.R. 578, 583 (Bankr. E.D. Pa. 2015) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). The Court's exercise of its discretion, however, is constrained by the fact that "[o]ne of the Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs and obtain a 'fresh start,' unburdened by the weight of preexisting debt. Accordingly, exceptions to discharge are construed strictly against creditors and liberally in favor of debtors." *In re Malloy*, 535 B.R. 81, 88 (Bankr. E.D. Pa. 2015) (citations omitted).

---

[6] *See* Am. Br. p. 3 ("[T]he gravamen of the Defendant's Answer is his erroneously stated presumption that the "Plaintiff is relying on the doctrine of collateral estoppel to preclude litigation of the non-dischargeability of his claim under Section 523(a)(6)."); Am. Br. p. 6 ("[T]he Plaintiff made no mention of "collateral estoppel" anywhere in his Motion for Summary Judgment.").

-7-

Collateral estoppel applies in a § 523 non-dischargeability proceeding only if (1) the issue sought to be precluded and the issue from the prior action are the same; (2) the issue was actually litigated in the prior action; (3) it was determined by a valid, final judgment; and (4) it was essential to the judgment. *In re Granoff*, 2006 WL 1997408, at *6 (Bankr. E.D. Pa. June 6, 2006) (quoting *In re Braen*, 900 F.2d 621, 628 n.5 (3d Cir. 1990)). The Third Circuit has expressly held that collateral estoppel does not apply to issues resolved by default because such issues are not actually litigated. *See In re Burke*, 416 B.R. 136, 139 n.1 (Bankr. E.D. Pa. 2009) (citing *In re McMillan*, 579 F.2d 289 (3d Cir. 1978) and *In re Kartman*, 391 B.R. 281, 283 (Bankr. W.D. Pa. 2008)); *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa. Commw. Ct. 2003).

It is undisputed here that the Judgment was entered by default against the Debtor. Thus, collateral estoppel clearly does not apply. Nevertheless, Corcoran appears to argue that collateral estoppel applies to the issues resolved by the CCP in connection with the damages hearing because the Debtor participated in that proceeding.[7]

Critically, however, at the damages hearing, the CCP did not make any legal determinations regarding the Debtor's underlying liability because that proceeding was limited to determining the amount of damages. *See* Pennsylvania Rule of Civil Procedure 1037(b)(1) (after default judgment is entered, "the damages shall be assessed at a trial at which *the issues shall be limited to the amount of the damages.*") (emphasis added).

Because the Debtor's underlying liability was never actually litigated in the Pre-Petition Litigation, and because the issues actually litigated by the CCP were strictly limited to the

---

[7] Corcoran avers: "Here, the issues of fact and law were determined by [the CCP], at a hearing in which the [Debtor] fully participated, and then appealed unsuccessfully. The [Debtor] should not be permitted to litigate them again." Am. Br. p. 9 (footnotes omitted).

- 8 -

amount of damages, which is not relevant to the § 523(a)(6) nondischargeability issue in this adversary proceeding, collateral estoppel would not have provided any basis for granting the Motion, even if Corcoran had properly raised it in the Motion.[8]

### C. Equitable and Judicial Estoppel Are Inapposite

Corcoran's final arguments for summary judgment under § 523(a)(6) invoke equitable and judicial estoppel. Specifically, he argues (without any relevant legal support) that, because the Debtor listed the Judgment on Schedule D, the Debtor is now estopped from opposing Corcoran's request that the Judgment be deemed nondischargeable under § 523(a)(6).[9]

Corcoran's argument is misplaced. Under § 521, the Debtor was required to list all of his liabilities, including the Judgment, on his schedules. The mere fact that the Judgment was included in the Debtor's schedules is simply not relevant to this Court's determination of whether the Judgment is nondischargeable. Indeed, Corcoran has the burden in this adversary proceeding (and an even higher burden on summary judgment) to demonstrate that the Judgment was for a willful and malicious injury which meets the criteria set forth in § 523(a)(6).

The doctrines of equitable and judicial estoppel "serve the common purpose of protecting the fairness and integrity of judicial proceedings." *In re Okan's Foods, Inc.*, 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998). The former concerns the relationship between the parties and "prevents a party from assuming a position inconsistent with an earlier position upon which another party reasonably relied." *Id.* (citing *Godwin v. Schramm*, 731 F.2d 153, 160 (3d Cir. 1984)). The

---

[8] In addition, the Opinion does not specify the basis for the award of compensatory and punitive damages or how they were calculated. It is therefore impossible for this Court to determine what issues were actually litigated and resolved in that proceeding.

[9] Corcoran argues that he and the Court "have relied on the [Debtor's] representations in [his] schedule of debts that the [Judgment] owed to [Corcoran] is legitimate, and worthy of discharge." Am. Br. p. 10. Therefore, Corcoran concludes that the Debtor cannot "claim that the [Judgment] does not lawfully exist and should, in fact, be relitigated." *Id.*

- 9 -

latter concerns the relationship between a party and the judicial system itself and "prevents a party from assuming a position in one proceeding that is inconsistent with a prior position asserted by that party either in the same or in an earlier proceeding." *Id.* (citing *McCarron v. F.D.I.C.*, 111 F.3d 1089, 1097 (3d Cir. 1997)).

Whether to apply equitable or judicial estoppel "lies within the sound discretion of the trial court." *Id.* A party asserting equitable estoppel must show "(1) a representation of material fact was made to the party; (2) such party had a right to, and did, rely on the representation; and (3) that denial of the representation by the party making it would injure the relying party." *Id.* (citing *Haymaker v. Green Tree Consumer Disc. Co.*, 166 B.R. 601, 605–06 (Bankr. W.D. Pa. 1994) and *In re Crain*, 158 B.R. 608, 612 (Bankr. W.D. Pa. 1993)). A party asserting judicial estoppel must show "(1) the party against whom the doctrine is asserted has taken a position that is inconsistent with an earlier position taken by such party in either the same or a previous proceeding; and (2) the party asserted either or both of the inconsistent positions in bad faith, i.e., with intent to play fast and loose with the courts." *Id.* at 755 (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996)). Corcoran has not satisfied either test.

With respect to equitable estoppel, the only representation of material fact that Corcoran has alleged is the Debtor's inclusion of the Judgment in his schedules. However, Corcoran has failed to demonstrate that the Debtor has ever taken an inconsistent position with respect to that representation or denied it. As discussed above, the Debtor's acknowledgement of the Judgment in his schedules has no relevance to the Court's determination as to whether the Judgment should be deemed nondischargeable. Similarly, the Debtor's opposition to Corcoran's attempt to obtain a determination that the Judgment is nondischargeable is not inconsistent with listing the

Judgment on the Schedules. Accordingly, Corcoran's equitable and judicial estoppel arguments fail.

In sum, neither res judicata nor collateral, equitable, or judicial estoppel determine whether the criteria for nondischargeability under § 523(a)(6) have been satisfied in this case. Corcoran's Motion under § 523(a)(6) will therefore be denied.

**D.      No Cause of Action Exists Under § 727(a)(4)(A)–(B) and (D)**

Finally, Corcoran seeks summary judgment on his § 727(a)(4) claims. He argues that the Debtor's "arguments that the underlying defamation judgment [is] legally insufficient by virtue of the default judgment" are false oaths and false claims under subsections (A) and (B). Am. Br. p. 11. He also argues that the Debtor withheld recorded information under subsection (D) because he failed to file an adequate Chapter 13 plan as suggested by the Trustee's objections to confirmation and motion to dismiss. Neither of these arguments have any basis in law.

By way of background, § 727(a)(4) provides, in relevant part, that the court shall not grant a discharge where a debtor, in or in connection with the bankruptcy, knowingly and fraudulently: "(A) made a false oath or account; (B) presented or used a false claim . . . [or] (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4).

Corcoran's first argument under § 727(a)(4)(A) fails because the Debtor has not made a false oath. The type of false oath that typically qualifies as a "sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." Colliers ¶ 727.04[1][c]. Here, as acknowledged by Corcoran, the Debtor has only made "arguments" regarding the collateral estoppel effect that the Judgment may have on this adversary proceeding.

- 11 -

A legal argument made by the Debtor is certainly not a factual statement that is sworn under penalty of perjury as contemplated in § 727(a)(4)(A). Finally, the only other "oath" made by the Debtor which is referenced by Corcoran in his Amended Brief relates to the Debtor's inclusion of the Judgment in his schedules. As discussed above, the Debtor was legally required to list the Judgment in his schedules and it is undisputed that the Judgment is a legitimate obligation of the Debtor.

Likewise, Corcoran's argument under § 727(a)(4)(B) fails because the Debtor has not made a false claim. In the rare circumstances where § 727(a)(4)(B) has been used to deny a discharge, courts "have required the plaintiff to prove that the debtor 'presented or used an inflated or fictitious claim.'" *In re Isaacson*, 478 B.R. 763, 792 (Bankr. E.D. Va. 2012) (emphasis added) (citations omitted) (quoting *In re Henderson*, 423 B.R. 598, 619 (Bankr. N.D.N.Y. 2010)). Moreover, "[s]uch cases generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim." *Id. See, e.g., In re Woerner*, 66 B.R. 964, 975–76 (Bankr. E.D. Pa. 1986) (declining to deny discharge under § 727(a)(4)(B) where the plaintiff failed to prove that a loan that the debtor listed on his schedule of debts was actually a gift). As noted above, Corcoran has only alleged that the Debtor made "arguments" regarding the collateral estoppel effect that the Judgment may have on this adversary proceeding. A legal argument made by the Debtor is certainly not the type of factual assertion that is contemplated in § 727(a)(4)(B). Finally, again, the only other "claim" made by the Debtor which is referenced by Corcoran in his Amended Brief relates to the Debtor's inclusion of the Judgment in his schedules. As discussed above, the Judgment listed by the Debtor is not false and it is undisputed that the Judgment is a legitimate obligation of the Debtor.

Corcoran's final argument under § 727(a)(4)(D) also fails because subsection (D) contemplates the withholding of recorded information that is "material to an understanding of the debtor's financial condition and transactions." *In re Robson*, 154 B.R. 536, 540 (Bankr. E.D. Ark. 1993) (citing *In re Ridley*, 115 B.R. 731, 737 (Bankr. D. Mass. 1990)). Here, the Debtor did not withhold any information regarding his financial condition and transactions. Rather, as evidenced by the Trustee's objections to confirmation, the Debtor simply failed to amend his Plan as directed and clarify "how the secured and priority claims are to be treated and/or paid by the standing trustee." First Trustee Obj. 1; Second Trustee Obj. 1. The Debtor's inability to file a confirmable plan does not constitute a withholding of recorded information.

This is clearly not the type of situation contemplated by subsection (D), which more appropriately targets debtors who "fail[] to comply with their affirmative duty to cooperate by opening all records for inspection." *In re Robson*, 154 B.R. at 540; *see also In re Gregg*, 510 B.R. 614, 626 (Bankr. W.D. Mo. 2014) (concerning tax returns); *In re Svetc*, 521 B.R. 892, 907, 911 (Bankr. W.D. Ark. 2014) (concerning real property and "furnishings, clothing, a computer, a pending insurance claim . . . [and] a second bank account"); *In re Henley*, 480 B.R. 708, 779 (Bankr. S.D. Tex. 2012) (concerning financial statements and accounts such as checking or savings accounts); *In re Wheaton*, 474 B.R. 287, 292 (Bankr. M.D. Fla. 2012) (concerning bank and credit card statements); *In re Sohmer*, 434 B.R. 234, 251–52 (Bankr. D. Mass. 2010) (concerning an inventory of cases that might result in contingency fees). Accordingly, Corcoran has failed to allege that the Debtor concealed recorded information for the purposes of § 727(a)(4)(D).

In sum, Corcoran is not entitled to summary judgment under §§ 727(a)(4)(A), (B) and (D).

## V. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is denied on all counts. An appropriate order follows.

Date: December 11, 2015

_____
Ashely M. Chan
United States Bankruptcy Judge

Copies to:

Brian Richard McCabe
*Debtor/Defendant*
191 Thornridge Drive
Levittown, PA 19054

David K. Lehman, Esq.
*Counsel for the Debtor/Defendant*
Richard W. Hoy & Associates
1518 Walnut Street, Suite 1600
Philadelphia, PA 19102

J. Conor Corcoran, Esq.
*Judgment Creditor/Plaintiff*
Law Office of J. Conor Corcoran, P.C.
123 S. Broad Street, Suite 1200
Philadelphia, PA 19109